**LOCAL 120, INTERNATIONAL MOLD-ERS & ALLIED WORKERS UNION, AFL–CIO, Plaintiff-Appellant,**

v.

**BROOKS FOUNDRY, INC., Defendant–Appellee.**

No. 87–2093.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 26, 1988.

Decided Jan. 9, 1990.

William J. Ryan (argued), Ryan & Ryan, P.C., Kalamazoo, Mich., for plaintiff-appellant.

Jerome A. Susskind (argued), Jackson, Mich., for defendant-appellee.

Before BOGGS, Circuit Judge; ENGEL *, Senior Circuit Judge; and BALLANTINE **, District Judge.

* Honorable Albert J. Engel assumed senior status effective October 1, 1989.

** Honorable Thomas A. Ballantine, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

**1284**

ENGEL, Senior Circuit Judge.

Local 120, International Molders and Allied Workers Union, AFL–CIO ("the Union") appeals from a summary judgment entered in the United States District Court for the Western District of Michigan, vacating an award of $13,000.00 in favor of the Union and against Brooks Foundry, Inc. ("the Company"). Because we believe that the arbitrator's award should have been enforced, we reverse the decision of the district court.

## I.

The parties are signatories to a collective bargaining agreement ("the Agreement"), dated July 7, 1984 to July 7, 1988, which includes an internal dispute resolution grievance procedure providing arbitration as a "final and binding" step. Because of losses suffered by the Company in early 1985, the parties executed an addendum to the Agreement on July 25, 1985 ("the Addendum"), which calls for wage concessions of approximately $2.00 per hour from each employee. Contrary to the terms of the Addendum, the wage level of one Union employee, Harry Cousins, was not reduced. The Company claims that Cousins' wages were maintained at the pre-Addendum level because he was promoted to "group leader" four days after the parties executed the Addendum. The Agreement provides that such a promotion entitles an employee to a minimum of a $.10 per hour salary increase. Cousins is a valued employee who would have left the Company if his wages were reduced. This appears to be the sole motive for his special treatment.

The Company's action became the subject of a grievance filed by the Union on January 2, 1986. The relief sought in the grievance was that "[a]ll membership … be made whole." Later the Union indicated that it was seeking $130,000.00, the aggregate wage concessions made by the employees under the Addendum. The parties were unable to settle their dispute, and the grievance was submitted to the arbitration procedure established by the Agreement. On April 3, 1986, the arbitrator held a hearing at which both the Union and the Company were represented; Harry Cousins was neither present nor represented.

In a written opinion issued on May 14, 1986, the arbitrator found that the Company's actions constituted a "technical violation" of the wage concession provision of the Addendum. While the arbitrator's opinion is not entirely clear, he appears to have reasoned that it was improper for the Company to have used a promotion to protect a favored employee from wage concessions which were intended to be universal. He further found that, in light of the circumstances of the case, it was improper for the Company to have taken such an action without the knowledge of and negotiations with the Union. Addressing the issue of an appropriate remedy, the arbitrator first noted that he would not order the reduction of Cousins' wages because the parties had not sought that remedy or even sought to have him made a party to the dispute. In addition, the arbitrator stated that the "massive sums requested by the union are inappropriate," but that further efforts to resolve the damages would likely be fruitless, "in light of the original efforts to settle the matter at hearing." Arb. Opinion at 6. Furthermore, the arbitrator indicated that he believed that the Company was financially unable to pay the $130,-000.00 requested by the Union. As a result, he determined that the Union should be awarded 10% of that amount—$13,-000.00—payable within thirty days.

When the Company refused to comply with the arbitrator's order, the Union filed this enforcement action in the district court pursuant to section 301 of the Labor Management Relations Act. 29 U.S.C. § 185(a). The parties filed cross-motions for summary judgment, stating that the only issue before the court was one of law: whether the arbitrator's award was enforceable. In its motion, the Company argued that the award was not enforceable and should be vacated because the arbitrator had exceeded his contractual authority and because the award was not drawn from the Agreement.

The district court initially "remanded" the case to the arbitrator for clarification

of his opinion and award. In a letter of clarification, the arbitrator stated that he found that, by seeking wage concessions while at the same time seeking to circumvent the Addendum by "promoting" Cousins, the Company acted in "bad faith." The arbitrator went on to state, however, that his decision was not "really" based on the Company's deportment. Instead, it was based on findings of fact which included the following: (1) the Company's preferential treatment of Cousins was contrary to the parties' Agreement to have equal wage sacrifices; (2) the Union indirectly financed the preference; (3) the preference made a sham of the parties' bargained-for Agreement; and (4) failure to take some corrective action effectively negated the Addendum.

On October 14, 1987, the district court issued an Order granting the Company's motion for summary judgment and vacating the arbitrator's award. In a separate Opinion, the court first declined to adopt the Company's argument that the Agreement expressly forbids the arbitrator to award monetary damages except in cases of wrongful termination or discharge. The court then determined, however, that this particular award was unenforceable because it could not be said to bring the parties into compliance with the Agreement and could not rationally be derived from its terms. The award was further flawed because it was based only on considerations of fairness and equity, rather than on a factual record. The court concluded that the award was in fact not compensatory damages but an effective restoration of the pay cut provided by the Addendum. The award thus modified the terms of the Agreement and was unenforceable, under the Agreement's provision that the arbitrator shall have no such authority.

On appeal, the Union contends that the district court erred in vacating the arbitrator's award, arguing that the arbitrator did not exceed his authority. Both parties agree that the Company's actions violated the Addendum and that there is no dispute over any material issue of fact. There is also no dispute over whether the issue is arbitrable. Therefore, the sole question before us is whether the arbitrator exceeded his authority by awarding $13,000.00 to the Union on the facts of this case.

## II.

The well-established principle "that the courts play only a limited role when asked to review the decision of an arbitrator" was reaffirmed shortly after the district court entered its decision in this case by *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Of remedies the Court stated:

> ... *where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect.* If courts were free to intervene ..., the speedy resolution of grievances by private mechanisms would be greatly undermined. Furthermore, it must be remembered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining. It is through these processes that the supplementary rules of the plant are established. As the Court has said, the arbitrator's award settling a dispute with respect to interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Id.* 108 S.Ct. at 371 (emphasis added). Our court recently noted that in *Misco* the Supreme Court "again advised lower federal courts to be more deferential to the arbitration process." *Eberhard Foods, Inc. v. Jerome Handy*, 868 F.2d 890, 891 (6th Cir. 1989).

Decisions of this court prior to *Misco* recognize the limited judicial role in these cases. *See, e.g., Dobbs, Inc. v. Local No. 614, International Brotherhood of Team-*

*sters,* 813 F.2d 85 (6th Cir.1987). In *Dobbs,* we shed further light on standards to determine whether an award draws its essence from the Agreement:

> The "arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." ... Further, there may be a departure from the essence of the agreement if "(1) an award conflicts with express terms of the collective bargaining agreement, (2) an award imposes additional requirements that are not expressly provided in the agreement, (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement...."

813 F.2d at 86 (quoting *Detroit Coil v. Int'l Ass'n of Machinists and Aerospace Workers, Lodge No. 82,* 594 F.2d 575, 579 (6th Cir.1979), and *Cement Divisions, Nat'l Gypsum Co. v. United Steelworkers of America,* 793 F.2d 759, 766 (6th Cir. 1986)).

Ultimately, this case must be resolved by application of two principles articulated in *Misco* and *Dobbs.* First is whether the arbitrator's award of monetary damages conflicts with the only applicable provision in the Agreement limiting his power, a claim which the district court rejected. Second is whether in fashioning the particular remedy in this case, the arbitrator arguably construed or applied the contract and acted within the scope of his authority, or instead imposed an award which cannot rationally be derived from the terms of the

Agreement and which reflects only his own notions of industrial justice. A negative conclusion on the second premise forms the basis of the district court's opinion. It is at this point that we part company with the district court.

### A.

█ In its brief, the Company repeats the argument, raised before the arbitrator and the district court, that any monetary award by the arbitrator in this case exceeds his authority under the Agreement. The Company bases its argument on two provisions in the Agreement: (1) the arbitrator "shall have no power to add to, subtract from, modify or change ... [the] provisions of the Agreement"; and (2) "[i]n the case of wrongful discharge or suspension, [the arbitrator] may not award monetary damages other than for back pay." Agreement, Joint App. at 37.[1]

In his Opinion and Award, the arbitrator recognizes the Company's argument:

> Management believes that the powers which are set forth at Page 7 and 8 of the labor agreement enumerate the full powers of the arbitrator and that in essence he has no power to add to, subtract from, modify or change any provisions of the agreement.

Arb. Opinion at 3, Joint App. at 9. The arbitrator expressly rejects this interpretation:

> While management has argued that it does not believe that I can fashion a remedy, I am not so persuaded.

*Id.* at 5, Joint App. at 11. On review, the district court noted that the Agreement does not expressly exclude the possibility of monetary relief in the instant case, and likewise declined to adopt the Company's

---

1. More fully, the Agreement establishes the arbitration process as follows:

> In the event the parties have been unable to settle the grievance, either party may file a Demand for Arbitration.... The authority of the arbitrator shall be confined strictly to the specific grievance which has been processed and appealed to arbitration in accordance with the provisions of this Agreement, and he shall have no power to add to, subtract from, modify or change any of the provisions of this

> Agreement.... The question of arbitrability shall not be a basis upon which either party shall refuse to follow the grievance procedure, including arbitration; provided, however, if presented the issue of arbitrability.... In the case of wrongful discharge or suspension, he may not award monetary damages other than for back pay.

Agreement, Joint App. at 37.

"narrow construction" of the arbitrator's remedial powers.

The question here is whether the arbitrator's interpretation of the Agreement not to forbid him to award monetary damages should be respected. If the Agreement is unclear, then the arbitrator's interpretation is "definitive." *Misco*, 108 S.Ct. at 373. *See Eberhard Foods*, 868 F.2d at 892–93 (where the language of a collective bargaining agreement does not expressly limit or deny the arbitrator's authority to review an employer's decision to terminate an employee, *Misco* requires the courts to defer to the arbitrator's construction of his authority under the Agreement). Since this case does not involve wrongful discharge or termination, the Agreement's restriction of monetary damages in such cases to back pay is not directly relevant, and the Company's negative pregnant argument that this restriction denies monetary damages in other cases fails on its own terms under the standard of *Misco*. The Company's argument that the "no modification" limitation on the arbitrator's power bars monetary remedies is similarly flawed. The language of this general provision is not so explicit as to subvert the arbitrator's interpretation of it. *Lynchburg Foundry Co. v. United Steelworkers of America, Local 2556*, 404 F.2d 259, 261 (4th Cir.1968) (in the absence of language evidencing a clear intent to deny the arbitrator any latitude of judgment regarding the appropriate form of a remedy, the arbitrator and not a court properly determines this issue).

### B.

▮ The second issue, of whether the arbitrator's monetary award in this case effectively modifies the terms of the Agreement, presents more difficulty. It has been long established that an award must draw its essence from the contract and cannot reflect simply the arbitrator's own notions of industrial justice. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). We answer this question by considering the several factors set forth in *Dobbs, supra*.

We are mindful, however, that here too our review is limited: while the arbitrator may not ignore the plain language of the Agreement, we may not vacate his award if he is arguably applying the Agreement. This is true even if we are convinced he has committed a "serious error." *Misco*, 108 S.Ct. at 371.

The issue here may be restated as whether the arbitrator's award fairly constitutes damages remedying a breach of the Agreement, or instead is merely a partial restoration of the pay cut established by the Addendum to the Agreement. The district court embraced the latter characterization. However, the court's several interrelated rationales for this conclusion individually and collectively stray afield from the controlling principles of *Misco* and *Dobbs*. First, the court denied that the arbitrator's purported compensatory damages award could plausibly be said to bring the parties into conformance with the contract. Opinion at 8. Yet the arbitrator apparently determined otherwise. Although his opinion is "not a model of clarity," as the district court recognized, Opinion at 5, he stated that the award was "damages," Arb. Opinion at 6, which would *"cushion"* the harm to the Union from the Company's breach of the Agreement. Arb. Clarification of Opinion at 1 (emphasis in original). Admittedly, it is not entirely clear how an award of $13,000 can be said to compensate the Union for the Company's bad-faith breach of the Agreement. Yet it is true that determining damages appropriate for an inchoate injury is not always an exact exercise, susceptible to strict logical explication. Directly relevant to this point, *Misco* recently reemphasized that an arbitrator " 'is to bring his informed judgement to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies.'* " 108 S.Ct. at 372 (quoting *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361 (emphasis added by *Misco* )). Under this standard we accede to the arbitrator's determination that the award is appropriate reparation for the breach.

The district court also found the arbitrator's award unenforceable under the stan-

dards of *Dobbs*, because it cannot rationally be derived from the terms of the Agreement and is based on general considerations of fairness and equity instead of the precise terms of the Agreement. Opinion at 9–10, citing *Dobbs*, 813 F.2d at 86. In holding the award not to be rationally derived from the Agreement, the district court stated that the parties could not have contemplated that partial restoration of the pay cut conceded by the Union could be appropriate reparation for the Company's bad-faith breach regarding the concession. Yet this point is not so apparent to us. More importantly, *Misco* directs that our focus is more properly not on our own speculations as to the parties' original intent, but on whether the arbitrator's conclusion that such damages are appropriate is at least plausible. As discussed earlier, we have no authority to disagree with the arbitrator's honest judgment regarding an appropriate remedy, even where we believe he commits "serious error." *Misco*, 108 S.Ct. at 371. We therefore may not simply reject as erroneous the arbitrator's determination that $130,000 in wage concessions or some portion thereof would fairly "cushion" the Union for the Company's breach. It is true that the arbitrator set the amount of the award by reference not only to the Union's injury but to the Company's ability to pay. Mindful of the deference due an arbitrator's "informed judgment [brought] to bear to reach a fair solution," *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361, we do not think it was such an abuse of authority to warrant disturbing the award that the arbitrator took into account the economic facts of life which prompted the pay cut provision violated by the Company. It is implicit in the Agreement and in accord with the interest of both parties that the arbitrator view the Agreement in the realistic light of the history which brought it about. In conclusion, then, the arbitrator's award here was perhaps unusual and even bizarre, but it was related to arguably proper compensatory damages and thus found its essence in the terms of the Agreement.

The district court's belief that the award was further flawed under *Dobbs* for being based on "general considerations of fairness and equity instead of the precise terms of the agreement," 813 F.2d at 86 (quoting *Cement Divisions*, 793 F.2d at 766), misunderstands the final standard set forth in *Dobbs*. Although perhaps inexactly stated, this standard does not condemn all awards informed by considerations of fairness but not expressly authorized by the Agreement. Rather, the element merely restates the familiar rule, established in *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361, that in fashioning an award, an arbitrator may not ignore plain language of the Agreement in favor of his own generalized notions of fairness. *See Dobbs*, 813 F.2d at 87 (arbitrator imposed a further procedural requirement favoring employees whom employer sought to discharge, although the "language of the rule [regarding discharges] is plain and unambiguous"); *Cement Divisions*, 793 F.2d at 767, the case which originally articulated the standard ("The Arbitrator's application of equitable principles [in inferring a notice requirement on the employer regarding employee benefit periods] contravened the express terms of the collective bargaining agreement."); *Local 342, United Auto Workers v. T.R.W.*, 402 F.2d 727, 730–31 (6th Cir.1968), which was cited in *Cement Divisions* (arbitrator added pro-employee requirements to the agreement's rule regarding discharge, although the rule was "neither unclear nor incomplete"). Since in the present case there is no such precise language relevant to the arbitrator's disputed action, the final standard of *Dobbs* does not apply. Accordingly, the district court erred in vacating the arbitrator's award on this basis.

Our conclusion to respect the arbitrator's award in this case draws some support from this court's decision in *General Telephone Co. of Ohio v. Communications Workers of America*, 648 F.2d 452, 457 (6th Cir.1981). In reversing the district court's opinion to vacate an arbitrator's award as not authorized by the collective bargaining agreement, we stressed that an arbitrator is to be given broad latitude and discretion in formulating remedies. *Gener-*

*al Telephone*, 648 F.2d at 457 (citing *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361). "There is a need for flexibility in meeting a wide variety of situations. The draftsman may never have thought of what specific remedy should be awarded to meet a particular contingency." *Id.*

The arbitrator's award and the basis for it in this case is not different in kind and substance from that which the Eighth Circuit declined to second-guess in *United Electrical, Radio, and Machine Workers of America, Local 1139 v. Litton Microwave Cooking Products, Litton Systems, Inc.*, 728 F.2d 970 (8th Cir.1984) (en banc). In *Litton*, the arbitrator found that the employer had violated the collective bargaining agreement by requiring union members to take vacations during a plant shutdown. As a remedy for the violation, the arbitrator awarded the union members a second paid vacation during the year at issue. The court found that the arbitrator had decided that a paid vacation was full compensation for this particular breach. Absent evidence that the arbitrator had clearly exceeded his authority, the court continued, it was not proper for a court to intervene because the arbitrator had decided to resolve doubts as to the proper remedy against the party who had broken the agreement. 728 F.2d at 972.

█ The task of judicial review in cases such as this is never an easy one for a trial or appellate court. The facts of this case illustrate graphically the fine line between formulating remedies appropriate for a particular breach and imposing one's own brand of industrial justice. We recognize also that it does not ease the task of a trial judge for an appellate court to reach a contrary conclusion with the observation that each decision must necessarily be based upon application of relevant law to the unique facts before the court. If there is a principle therefore to be drawn in our reversal here, it is our conclusion following *Misco* that in close cases such as this, the decision of the arbitrator must be accorded controlling respect.

The trial court's task here was made all the more difficult by the peculiar circumstances of this case, which make it likely that our decision here will have little precedential effect. Neither party seemed willing adequately to analyze its actions under the law of the Agreement here or labor law generally. It seems at least arguable that the normal remedy for such conduct as appears here would be a grievance action by the union before the NLRB, alleging an unfair labor practice under § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) (1982). However, it was the position of both the Company and the Union before the arbitrator that the union would have no relief through the NLRB. Plainly the Union preferred instead to seek some concession from the Company which would benefit its members and in some way restore the pay cut to which they had agreed. For its part, the Company might have objected that this grievance, if properly subject to a NLRB proceeding, was outside the ambit of the arbitration process under the Agreement. The logic of this would be that not every breach of a collective bargaining Agreement is addressable by the arbitration machinery provided by the Agreement. Yet the company did not seriously deny that the arbitrator had jurisdiction over this dispute. *See* Arb. Opinion at 3–4. Since the matter apparently thus came to the arbitrator under a tacit agreement that arbitration was the least objectionable of all possible avenues of resolution, the arbitrator simply concluded to accept the case as the parties had presented it to him while observing, with all too much truth, that this was a situation in which "bad cases make bad law." Arb. Opinion at 5. Upon the Union's suit to enforce the award, the district court was forced to proceed on this assumption. On appeal we are similarly constrained.

Even more problematic is the remedy sought. As the arbitrator noted, the Union did not seek to compel the company to abide by the pay cut in the Addendum by reducing Cousins' wages. Moreover, neither the Union nor the Company sought to subpoena or otherwise to involve him in the proceedings. The arbitrator therefore did not consider reducing Cousins' wages, because to do so would deny him due process.

Arb. Opinion at 5. A further unusual circumstance is that the Company did not expressly object to the fact that the $13,000 award was to be paid to the Union and not to the employees. Instead, the Company confined its argument to the claim that if there was a breach of the Agreement, there was not any basis for a remedy under the Agreement. We are therefore faced with the arbitrator's uncontested construction of the Agreement which finds it was violated by the Company, and a remedy which seems both insufficient if intended as a restoration of benefits and excessive if simply intended as an award to the Union which seems to have suffered no injury. It is at this point which we believe that *Misco* commands us to accord deference to the arbitrator, who saw his award as one which in effect recognized both the breach and the Company's limited ability to pay damages. In conclusion, therefore, where conduct of one party is arguably subject to arbitration, we will defer to the arbitrator's authority to fashion a unique remedy, where the remedy does not appear to have been expressly barred by the collective bargaining agreement, and where the remedy is at least arguably supported by equitable considerations which arise from the essence of the collective bargaining Agreement itself and the history of its development as seen by the proofs before the arbitrator. This is admittedly not a perfect solution, but it is one which does as little damage to the law of arbitration and the law of the collective bargaining Agreement as possible given the posture of the case as presented to the arbitrator and to us.

The judgment below was on the parties' cross-motions for summary judgment. We therefore REVERSE and REMAND to the district court with instructions to enter judgment enforcing the arbitrator's award.