RANDELL MANUFACTURING,
INC., Plaintiff,

v.

LOCAL UNION NO. 814, INTERNATIONAL UNION, ALLIED INDUSTRIAL WORKERS OF AMERICA, AFL–CIO, Defendant.

No. 93–CV–10096–BC.

United States District Court,
E.D. Michigan, N.D.

Nov. 23, 1993.

J. David Kerr, Mount Pleasant, MI, for plaintiff.

James M. Moore, Detroit, MI, Matthew R. Robbins, Milwaukee, WI, for defendant.

### MEMORANDUM OPINION AND ORDER

CLELAND, District Judge.

The case is before the Court on cross motions for summary judgment. Oral argument was heard on October 20, 1993.

IT IS ORDERED that, for the reasons stated herein, Plaintiff's Motion for Summary Judgment is GRANTED and Defendant's Motion for Summary Judgment is DENIED, and

IT IS FURTHER ORDERED that this case is DISMISSED.

### I. BACKGROUND

It is agreed that there are no material issues of fact which are in dispute. The parties to this matter are also parties to a Collective Bargaining Agreement ("Agreement"). Plaintiff/Counter–Defendant Randell Manufacturing, Inc. ("Randell" or "Plaintiff") is an employer and Defendant/Counter–Plaintiff Local Union No. 814 ("Union" or "Defendant") represents workers at Randell. The Agreement provides, after a three-step in-house grievance process, for arbitration of labor disputes for union members. See First Amended Complaint, Ex. A., Arbitrator's Opinion ¶ 10 ("Arbitrator's Opinion"). Charles Mayhew, an employee and union member, was fired by Randell for failure to comply with the notification requirements of the Absenteeism & Tardiness Policy.[1] The following facts, which are accepted by this Court, were determined by the Arbitrator.

On March 26, 1992, Mayhew injured his shoulder and back at work. A representative from the personnel department at Randell arranged for him to see Dr. Carson, the company's physician who treats employees injured on the job. On that same day, Dr. Carson informed the personnel department that Mayhew was unable to work and that he had another appointment on March 30th.[2] At the March 30th appointment, Dr. Carson found that Mayhew was still unable to work. Another appointment was scheduled for April 6th. On that date, Mayhew revisited Dr. Carson and it was again determined that he was unable to return to work. Mayhew claims that he contacted Randell's Payroll Clerk, Donna Thren, on March 30th, after his appointment. He allegedly told her that he'd be off (per the Doctor's instructions) a while longer. In response, Ms. Thren allegedly told him (Mayhew) to "let me know what's going on."[3] Because it had not heard from

---

1. The policy is not part of the Agreement itself, but was subsequently entered into by the parties. As neither party disputes the validity of the policy, the Court construes it as a "Supplemental Agreement" which becomes enforceable under the express provisions of the Agreement. See First Amended Complaint, Ex. A. at 26, ¶ 38.

2. Unless stated otherwise, all dates are in 1992.

3. Ms. Thren testified that no conversation between herself and Mayhew took place on that date.

Mayhew, the personnel department at Randell contacted Dr. Carson's office on April 8th. A person from the Doctor's staff provided Randell with a full update as to Mayhew's status at this time (this information included the Doctor's "no work" order of April 6th as well as the order for the next appointment, which was scheduled for April 13th). See Arbitrator's Opinion 4. The Arbitrator found that, by April 8th, Randell "was aware" by telephone of Mayhew's April 6th appointment and his physical condition. In spite of this, on April 9th Randell sent a letter to Mayhew stating that he had three consecutive days of absence (apparently the 6th, 7th and 8th) without proper notification to Randell. Under the terms of the "Absenteeism & Tardiness Policy" this was construed to be a "voluntary quit." See Arbitrator's Opinion 4. Mayhew phoned the company the next day and explained that he had in fact complied with the notification requirements of the policy by contacting the company (as outlined above) on March 30th. After receiving this response, a Randell employee allegedly appended the following note to the copy of the April 9 letter of termination:

> Charlie [Mayhew] claims he called in on 3/30/92. We have no record of this call.
>
> We have given Charlie the benefit of the doubt and proceeded as if he *did* call in on 3/30—his next appt. was 4/6—Charlie did not call in following the 4/6 appt.—we consider Charlie to have voluntarily quit effective 4/6/92.

See Arbitrator's Opinion 5.

Mayhew filed a grievance which was ultimately heard by an arbitrator. Under the Collective Bargaining Agreement, to which Mayhew was a party, the arbitrator is prohibited from adding to, modifying, or implying terms into the agreement. The Agreement states in pertinent part that:

> The arbitrator shall have no power to add to or modify any of the terms of this Agreement ... nor shall the arbitrator in deciding a case imply into the Agreement provisions which are not in the express written terms of the Agreement

See First Amended Complaint, Ex. A. ¶ 10.-2.3. In interpreting the Collective Bargaining Agreement the Arbitrator noted at the outset of his discussion that:

> The applicable collective bargaining agreement between Randell and the Union does not contain language setting forth a standard upon which an employee's separation from employment is to be measured

See Arbitrator's Opinion 5 (fn. omitted).

Drawing a quotation from a 1985 publication, *How Arbitration Works,* the Arbitrator noted that:

> "A 'just cause' basis for consideration of disciplinary action is ... implied in a modern collective bargaining agreement." I subscribe to this statement of arbitral law. Furthermore, a just cause criteria can be implied from the terms of the current Agreement

See Arbitrator's Opinion 5 (fns. omitted).

Because Randell was determined not to have had just cause sufficient to terminate Mayhew's employment, the discharge of Mayhew was set aside by the Arbitrator and Mayhew was granted reinstatement without back pay.

Randell Manufacturing filed suit in state court seeking to vacate the award issued by the Arbitrator on January 11, 1993, on the basis that the Arbitrator exceeded his authority by implying a "just cause" provision into the terms of the contract. The case was removed (and this Court has jurisdiction) pursuant to 29 U.S.C. § 185(a) and 28 U.S.C. § 1441. The sole issue before this Court is whether, by implying a "just cause" termination provision into the terms of the Collective Bargaining Agreement, the Arbitrator exceeded his authority.

## II. STANDARD OF REVIEW

The standard of review in arbitration cases is narrow. *Dobbs, Inc. v. Local No. 614, International Brotherhood of Teamsters,* 813 F.2d 85, 86 (6th Cir.1987). Courts "have no business overruling [the arbitrator] because their interpretation of the contract is different from his." *Id.* (citation omitted). Further, as a general rule, courts are reluctant to overturn arbitrable decisions. The reasons for insulating arbitral decisions from judicial review are grounded in the federal

statutes regulating labor-management relations. These statutes reflect a decided preference for private settlement of labor disputes without the intervention of the government. See *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 37, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). In the cases commonly referred to as the "Steelworkers Trilogy," the Supreme Court stated that an arbitrator's award is legitimate if it "... draws its essence from the collective bargaining agreement." See e.g. *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). With respect to contract interpretation, the Sixth Circuit has held that:

> The 'arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contact language, *he is without authority to disregard or modify plain and unambiguous provisions.'* ...
> Further, there may be a departure from the essence of the agreement if '(1) an award conflicts with express terms of the collective bargaining agreement, (2) an award imposes additional requirements that are not expressly provided in the agreement, (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement....'

*Local 120, International Molders & Allied Workers Union v. Brooks Foundry, Inc.*, 892 F.2d 1283, 1286 (6th Cir.1990) (quoting *Dobbs, Inc. v. Local 614, International Brotherhood of Teamsters*, 813 F.2d 85, 86 (6th Cir.1987)); *see also Detroit Coil Co. v. Int'l. Ass'n. of Machinists and Aerospace Workers*, 594 F.2d 575, 579 (6th Cir.1979) and *Cement Divisions, Nat'l. Gypsum Co. v. United Steelworkers of America, etc., Local 135*, 793 F.2d 759, 766 (6th Cir.1986). Furthermore, the Supreme Court in *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), stated that:

> ... To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court

may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. *The arbitrator may not ignore the plain language of the contract;* but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract

*Id.* at 38, 108 S.Ct. at 371 (emphasis added).

## III. DISCUSSION

The Agreement in the instant case states:

> The arbitrator shall have no power to add to or modify any of the terms of this Agreement ... *nor shall the arbitrator in deciding a case imply into the Agreement provisions which are not in the express written terms of the Agreement*

Agreement ¶ 10.2.3 (emphasis added).

██ While there is no doubt that deference is given by a reviewing court to an arbitrator's award, *the arbitrator may not ignore the plain language of the contract.* *United Paperworkers* 484 U.S. at 38, 108 S.Ct. at 371.

The gravamen of Plaintiff's Motion for Summary Judgment is that the Arbitrator exceeded his authority by ignoring the plain language of the contract. Plaintiff emphasizes § 10.2.3 of the Agreement which, as stated, prohibits an arbitrator from implying into the contract terms which are not part of the express written agreement. Plaintiff further argues that, because the Arbitrator exceeded his authority the award (i.e. reinstatement), does not draw its essence from the collective bargaining agreement and therefore must be vacated. See *Local 120, International Molders & Allied Workers Union v. Brooks Foundry, Inc.*, 892 F.2d 1283, 1286 (6th Cir.1990). This Court agrees.

Defendant Union did not, in its written pleadings, attempt to refute Plaintiff's argument that the Arbitrator's decision actually conflicts with the express terms of the Agreement but instead maintained that, where the contract is silent (i.e. where no standard for termination is expressed), the

arbitrator does not exceed the scope of his authority when he implies a "just cause" termination standard into an agreement. See Defendant's Motion for Summary Judgment 7; Defendant's Reply 3. At oral argument, Counsel for the Defendant shifted this approach somewhat and attempted to persuade the Court that the Arbitrator did not really "imply" anything into the Agreement, but instead merely harmonized disparate concepts existing therein. In support of this argument Counsel pointed out the distinctions made within the Agreement between probationary (less than ninety days of continuous employment) and non-probationary (greater than ninety continuous days of employment) employees. Probationary employees are not entitled to utilize the grievance procedure accorded their non-probationary co-workers. Counsel for Defendant suggested (as did the Arbitrator) that a different standard for termination must be conferred upon regular (i.e. non-probationary) employees. The rationale relied upon is that, if both classes of workers could be treated identically (i.e. if both could be terminated without "just cause"), it would have been unnecessary to identify new employees as being on 90 day probation because all employees would be on "... continuous probation." See Arbitrator's Opinion 5, n. 6. This argument is spurious. A reading of the Agreement which does not bestow a just cause termination standard upon regular employees does not somehow render illusory the other (agreed upon) promises made exclusively to those employees. Under the Agreement, for example, a regular employee (such as Mayhew) terminated for violation of the Absenteeism & Tardiness Policy's notification requirements would be able to invoke the grievance procedure to determine whether or not such a violation actually occurred. Such an employee's probationary counterpart—terminated for the identical reason—would have no such redress.

In this case, the Arbitrator's own statements are the best reference for what was in fact done. The Arbitrator unequivocally stated that "... a just cause criteria can be [and would be] *implied* from the terms of the current Agreement." Arbitrator's Opinion 5 (footnote omitted). When asked at oral ar-

gument if the Arbitrator was incorrect in describing his decision in this way, Defense Counsel suggested, essentially, that he was. The Court remains unpersuaded. Defendant contends that "... it is a well-established arbitral principle that a just cause standard for disciplinary action may be implied in collective bargaining agreements, unless the contract contains a *clear* provision to the contrary." See Reply 3. The cases relied upon by Defendant in support of its position are, however, readily distinguishable from the instant case.

In *Dickeson v. DAW Forest Products Co.*, 827 F.2d 627, 630 (9th Cir.1987) (a case which does not involve the review of an arbitrator's decision, but is otherwise on point), the court held that the collective bargaining agreement contained an implied condition that discharge could be upon "good cause" only. In that case, however, the contract provided that a finding must be made as to whether or not a terminated employee was "unjustly discharged" and further stated that:

> ... If it is found that an employee was *unjustly discharged* or suspended, he shall be reinstated in employment in accordance with the terms of the settlement of the grievance....

*Id.* at 630 (emphasis added). The court distinguished the above language from an earlier case (*see Local Union No. 2812, Lumber Production & Industrial Steelworkers v. Missoula White Pine Sash Co.*, 734 F.2d 1384 (9th Cir.1984)) where the contract did not require a "finding" as to whether a discharge was made with good cause. In *White Pine*, the same court held that a right to discharge only for good cause could *not* be inferred from a grievance procedure when it did not contemplate a finding as to whether a discharge was made with good cause, and provided that an employee would remain discharged unless the employer and the union agreed that he should be reinstated.

Defendant also relies on two decisions by other arbitrators to support its argument that an implication of the "just cause" provision, under the facts of the instant case, is proper. The arbitrators in those cases each implied such a clause when interpreting the

collective bargaining contracts before them. Those cases, however, are also distinguishable from the instant case in that neither of the respective contracts contained (as does the contract before this Court) unequivocal language which delimits the arbitrator's ability to *imply* provisions not otherwise expressly agreed to. (See e.g. *In re Binswanger Glass Co.*, 92 LA 1153 (1989) (contract language prohibited arbitrator from "adding, subtracting, or modifying any terms of this agreement" but was silent—unlike the contract in the instant case—as to whether or not arbitrator could *imply* within the agreement terms which are not part of the express written terms of the agreement), and *In re B.F. Goodrich Tire Co.*, 36 LA 553 (1961) (same). Defendant's reliance on *United Food & Comm. Workers International v. Gold Star Sausage*, 487 F.Supp. 596 (D.Co. 1980) is also misplaced (There the parties *expressly* agreed that certain conduct would not be cause for discharge; therefore it was possible—unlike under the terms of the instant contract—to infer (i.e. *imply* ) that any discharge would be only "for cause"). *Id.* at 599. See also *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310 (7th Cir.1981) (nothing in contract prohibited arbitrator from implying terms that were not otherwise expressed).[4]

Defendant states that Plaintiff "has cited to no authority to support its contention that an arbitrator exceeds his jurisdiction by implying reasonable terms into an agreement where the contract is silent on the issue." Reply 5. This is only partly true. While it is true that Plaintiff has not proffered (and this Court has not found) any cases where a court has vacated an arbitrator's decision based on facts identical to those presented in the instant case, it is also true that the contract herein (unlike the contracts in the cases relied upon by Defendant) is not "silent on the issue [of implied terms]." *Id.* The Agreement unambiguously states that an arbitrator is precluded from "imply[ing] into the agreement provisions which are not in the express written terms of the agreement." See Agreement § 10.2.3.

In the instant case the Arbitrator disregarded and ignored the plain language of the contract when he implied a "just cause" termination provision in the face of express (and unambiguous) contractual language which prohibited an arbitrator from "... imply[ing] into the agreement provisions which are not in the express written terms of the agreement." See Agreement § 10.2.3. The Arbitrator, apparently unnerved at the perceived bad faith underlying Randell's decision to terminate Mayhew for violating the strict notification requirements of the Absenteeism & Tardiness Policy, improperly based his decision on general notions of fairness and equity instead of the precise terms of the Agreement. *Local 120, International Molders & Allied Workers Union v. Brooks Foundry, Inc.*, 892 F.2d 1283, 1286 (6th Cir. 1990). Indeed, it appears to the Court that the Arbitrator set out to create a contract of his own, rather than interpret the one before him. Various statements of the Arbitrator give weight to this inference. See e.g. Arbitrator's Opinion 6 ("... Randell may not slavishly adhere to the terms of [the Absenteeism and Tardiness] policy where to do so elevates form over substance.") and *id.* at 7 (The notification requirements of the Absenteeism and Tardiness Policy "... ought not stand on ceremony or some reporting protocol. ...."). While the standard of review in cases involving arbitrators decisions has been narrowed, the review function is not utterly abrogated thereby. An arbitrator cannot avoid court review simply by intoning the phrase "contract interpretation." Instead, the arbitrator is confined to actual interpretation and application of collective bargaining agreements, and although he may construe ambiguous contact language, *he is without authority to disregard, ignore, or modify plain and unambiguous provisions of the contract.* See e.g. *Local 120, International Molders & Allied Workers Union v. Brooks Foundry, Inc.*, 892 F.2d 1283, 1286 (6th Cir. 1990) (emphasis added) (citation omitted);

---

**4.** It is also of interest to note that, in at least some cases, the parties have included a "just cause" termination provision within the *express* terms of the contract when such a standard was intended. See e.g. *Stevenson v. Nabisco Brands, Inc.*, 757 F.Supp. 1026 (E.D.Mo.1991) (collective bargaining agreement stated that employer shall not discharge *any* employee without just cause).

*United Paperworkers International Union v. Misco, Inc.,* 484 U.S. at 38, 108 S.Ct. at 371.

■ In the instant case, the contract's language is clear. It unequivocally prohibits the "implication" of terms not found in the written agreement. It is not disputed that a "just cause" termination provision is *not* contained within the express terms of the contract in the instant case. See Arbitrator's Opinion 5. Nevertheless, the Arbitrator did indeed *imply* such a term. Under these circumstances, the Arbitrator exceeded the scope of his authority and thus his award must be VACATED.

## IV. CONCLUSION

Because the arbitrator cited outside the scope of his authority in awarding reinstatement to the employee his award must be, and is, VACATED. Therefore, Plaintiff's Motion for Summary Judgment is hereby GRANTED and Defendant's Motion for Summary Judgment is hereby DENIED; Defendant's Motion for Attorney Fees is DENIED; and this case is DISMISSED.

IT IS SO ORDERED.