UNITED ASSOCIATION OF JOUR-
NEYMEN AND APPRENTICES OF
THE PLUMBING AND PIPEFIT-
TING INDUSTRY, LOCAL NO. 577,
Plaintiff–Appellee,

National Labor Relations Board,
Intervenor–Appellee,

v.

ROSS BROTHERS CONSTRUCTION
COMPANY, Defendant–
Appellant.

No. 98–3444.

United States Court of Appeals,
Sixth Circuit.

Argued: March 17, 1999.

Decided and Filed: Sept. 17, 1999.

Gary A. Snyder (argued and briefed), Michael A. Ledbetter, Snyder, Rakay & Spicer, Dayton, Ohio, for Plaintiff–Appellee.

Paul A. Ades, National Labor Relations Board, Office of the General Counsel, Washington, DC, Margery E. Lieber, National Labor Relations Board, Special Litigation Branch, Washington, DC, for Intervenor–Appellee.

C. Robert Schaub (argued and briefed), Hermansdorfer, Schaub, Coburn & Winans, Huntington, West Virginia, for Defendant–Appellant.

Before: JONES, CONTIE, and MOORE, Circuit Judges.

## OPINION

NATHANIEL R. JONES, Circuit Judge.

Defendant-appellant Ross Brothers Construction Company ("Ross Brothers" or "the Company") appeals the district court's judgment dismissing its counterclaim against plaintiff-appellee United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry, Local No. 577 ("the Union" or "Local No. 577"). For the reasons that follow, we **AFFIRM.**

## I.

The circumstances surrounding Ross Brothers' counterclaim arose from a complaint originally filed by Local 577, which alleged that Ross Brothers engaged in unfair labor practices in violation of §§ 8(a)(1) and (a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(a)(1) and (a)(5), by refusing to pay contractually agreed upon wages. *See*

---

**1.** The Union also named several other contractors as defendants. The claims against

*NLRB v. Ross Bros. Constr. Co.*, No. 95–5135, 1997 WL 215513 (6th Cir. Apr.29, 1997)(per curiam). Although the issues regarding the underlying claim have been resolved, a brief recitation of the facts involved will elucidate the issues before this court in the instant appeal.

Local 577 is a labor organization and bargaining agent based in Portsmouth, Ohio, which represents journeymen and plumbing and pipefitting workers. Local 577, Ross Brothers and other contractors were parties to the National Industrial Maintenance Agreement for the United States of America ("NIMA"). Pursuant to the NIMA, Local 577 agreed to refer qualified Union members to Ross Brothers and the other contractors, and the contractors agreed to "pay wages and benefits according to the agreement in effect between local unions and employers working in the local union's jurisdiction." *Ross Bros.*, 1997 WL 215513, at *1; see also J.A. at 47 ("Wage rates shall be those as set forth in the current Labor Agreement of the affiliated Local Union where such work is to be performed...."). Further, the NIMA prohibits Union members from conducting "work stoppages" and companies from conducting "lockouts." J.A. at 49.

In August 1992, Local 577 filed a complaint against Ross Brothers seeking to enforce the parties' collective bargaining agreement.[1] Local 577 also alleged that Ross Brothers violated the NIMA by refusing to comply with the wage and benefits provisions of the NIMA and by attempting to withdraw from multi-employer bargaining. Ross Brothers thereafter filed its counterclaim alleging that:

[Union members] have engaged in concerted and deliberate slowdowns, refusals to work, performance of work below acceptable standards and similar acts, and were induced and encouraged to do so by Local 577, through its authorized agents and representatives, as a part of

---

those defendants have since been dismissed.

which the Local 577 Union Steward physically attacked and assaulted a supervisor of Ross Brothers, all in a deliberate and concerted effort to cause loss, damage, expense, loss of future work and continuing damage to each of [the] Contractor Defendants.

J.A. at 40.[2] Ross Brothers further claimed that as a result of the Union's actions, it "has incurred loss, damage and expense in an amount not presently ascertainable...." *Id.*

Thereafter, the NLRB intervened in the dispute, and the district court stayed proceedings until the parties resolved the matters brought before the NLRB. The NLRB determined that Ross Brothers violated §§ 8(a)(1) and (a)(5) of the NLRA by refusing to pay wages and benefits required by the NIMA, and ordered Ross Brothers to cease and desist its unfair labor practices. We enforced the NLRB's order on appeal. *See Ross Bros.*, 1997 WL 215513, at *5. Following our decision, the district court ordered the case to be dismissed unless either party filed a notice to reopen the case. Thereafter, Ross Brothers moved to reopen its counterclaim. Local 577 filed a motion to dismiss Ross Brothers' counterclaim pursuant to Fed. R.Civ.P. 12(b)(6).

The district court granted Local 577's motion to dismiss, concluding that the matters set forth in the counterclaim were "matters subject to binding arbitration under the terms of the collective bargaining agreement." J.A. at 30. Thus, the district court concluded that Ross Brothers' failure to exhaust the grievance and arbitration procedures set forth in that agreement was fatal to the Company's counterclaim. This timely appeal followed.

## II.

"The district court's ruling on a Rule 12(b)(6) motion to dismiss is a question of law subject to *de novo* review." *Spurlock v. Satterfield*, 167 F.3d 995, 1000 (6th Cir. 1999). We construe defendant's counterclaim liberally and in the defendant's favor, and accept all of defendant's factual allegations as true. *Id.*; *see also G.M. Eng'rs & Assocs., Inc. v. West Bloomfield Township*, 922 F.2d 328, 330 (6th Cir. 1990). We will grant a Rule 12(b)(6) motion to dismiss " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

■ We review the district court's interpretation of the NIMA *de novo*, as this issue is also a question of law. *See Weimer v. Kurz–Kasch, Inc.*, 773 F.2d 669, 671 (6th Cir.1985); *Jefferson City Cabinet Co. v. International Union of Elec., Radio & Mach. Workers*, 313 F.2d 231, 233 (6th Cir.1963)("[I]t is for the Court to determine, as a matter of law, whether, under the provisions of the bargaining agreement between the parties, the present claim of the Company for damages for breach ... of the Agreement is or is not an arbitrable one.").

## III.

On appeal, Ross Brothers argues that the district court erred in dismissing its counterclaim for failure to exhaust the NIMA grievance procedures because (1) the plain language of the NIMA applied only to lockouts, work stoppages and strikes, not to the types of detrimental employment activities Ross Brothers alleged in its counterclaim; and (2) arbitration would have been futile because "[t]here is no meaningful remedy for Ross Brothers under the Agreement, since

---

**2.** Ross Brothers also alleged in its counterclaim that it overpaid various health and welfare benefits to Union employees, and sought recovery of the alleged overpayments. This issue has already been resolved by the NLRB and enforced by this court in the prior appeal. Thus, we decline to revisit this issue in the instant appeal.

there is no way of recovering its damages." Ross Brothers' Br. at 8. Local 577 responds that the district court properly dismissed Ross Brothers' complaint because the Company failed to pursue the grievance procedures set forth in the NIMA. We find Local 577's argument on this point persuasive, and conclude that Ross Brothers' arguments to the contrary lack factual and legal merit.

### A.

■ It is well-settled that "a party must exhaust contractual grievance remedies before seeking relief in federal court." *Wilson v. International Bhd. of Teamsters*, 83 F.3d 747, 752 (6th Cir.1996). *Accord Clayton v. International Union*, 451 U.S. 679, 681, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Durham v. Mason & Dixon Lines, Inc.*, 404 F.2d 864, 865 (6th Cir. 1968). Accordingly, if a party fails to pursue contractual grievance remedies, the party waives the right to have its grievance settled in federal court. *See Durham*, 404 F.2d at 865.

■ Article VI of the NIMA specifically sets forth grievance remedies and provides that "[g]rievances, other than those pertaining to jurisdiction or general wage rates on any work covered by this Agreement shall be handled [in accordance with the steps delineated in the Article]." J.A. at 47. Article VI then sets forth a five-step procedure that the parties must follow for resolution of their grievances. Pursuant to that procedure, the aggrieved party must file the initial grievance "within ten ... days after the complained-of event arose," and the party must file an appeal "to the next higher step within ten ... days after the meeting in the lower step." J.A. at 47. Step four of the procedure provides that "[i]f the parties are unable to effect an amicable settlement or adjustment of *any grievance or controversy*, such grievance or controversy shall be sub-

mitted to the National Maintenance Agreements Policy Committee, Inc. [the "Policy Committee"] . . . ." *Id.* (emphasis added). Step five provides that if the Policy Committee is unable to resolve the dispute, the issue must be submitted for binding arbitration.

Despite the plain language of Article VI, Ross Brothers nonetheless contends that Article XXII of the NIMA, which provides that "there shall be no lockout by the Company and no work stoppages by the Union," J.A. at 49, is the pertinent NIMA provision. Ross Brothers argues that because it alleged that the Union committed work "slowdowns," not "work stoppages" as contemplated by Article XXII, there is no NIMA provision applicable, and it was therefore not required to submit its claims to arbitration. The district court properly rejected this argument. Although Ross Brothers alleged in its counterclaim that Local 577 members engaged in activities that are not considered "work stoppages" under Article XXII, we find that Article VI's "any grievance or controversy" language is clearly broad enough to encompass these alleged activities.[3] Ross Brothers has failed to explain why Article VI does not apply. Indeed, in *Jefferson City*, we considered terms similar to the "any grievance or controversy" language found in Article VI, and concluded that the phrase "all complaints, all disputes and all grievances" is "broad language ... which is not restricted to disputes involving questions of interpretation or application of any clause or matter covered by the contract. . . ." 313 F.2d at 236. Our conclusion in *Jefferson City* applies with equal force to the case *sub judice*.

Article VI's grievance remedies indicate that the parties' intent was to resort to dispute resolution mechanisms via the NIMA Policy Committee and, if necessary, arbitration. Ross Brothers did not resort to any of these dispute resolution mecha-

---

**3.** We also note that Ross Brothers' counterclaim alleged that the Union engaged in "concerted and deliberate ... *refusals to work*," J.A. at 40 (emphasis added), which would undoubtedly be considered a "work stoppage" as contemplated by Article XXII.

nisms and cannot now attempt to circumvent the parties' agreement by seeking redress in federal court. As the Supreme Court has made clear, "[i]n the absence of any express provision excluding a particular grievance from arbitration, ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail...." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Ross Brothers has not set forth any such "forceful evidence." Thus, resolution of its counterclaim was "a question for the arbiter, not for the courts." *Id.* at 585, 80 S.Ct. 1347.

## B.

■ Ross Brothers next contends that resort to Article VI's dispute resolution mechanisms would have been ineffective because "the arbitrator under the grievance procedure has no authority to grant damages to Ross Brothers for violations by Local 577." Ross Brothers' Br. at 6. In support of its argument, Ross Brothers points to the provision in Article VI stating that "[t]he arbitrator shall only have jurisdiction and authority to interpret, apply or determine compliance with the provisions of this Agreement." J.A. at 47.

A review of well-established arbitration principles shows that this argument is equally unavailing. As an initial point, we find that Article VI indicates that the parties intended for the arbitrator to have authority to interpret the NIMA. Thus, whether the alleged Union activities constituted a "grievance or controversy" under Article VI was a question of contract interpretation for the Policy Committee and/or the arbitrator. *See United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Further, this court and the Supreme Court have noted that arbitrators must have the flexibility to resolve labor disputes effectively, and thus, "an arbitrator is to be given broad latitude and discretion in formulating remedies." *Local 120, Int'l Molders & Allied Workers Union v. Brooks Foundry, Inc.*, 892 F.2d 1283, 1288 (6th Cir.1990); *see also United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)(noting that in "formulating remedies" the arbitrator must have "flexibility in meeting a wide variety of situations"). Ross Brothers has not presented any evidence that the arbitrator would have been unable to award monetary damages in exercising this broad discretion. Further, Ross Brothers fails to persuade us when it suggests that the arbitrator would have been unable to award monetary damages upon a finding that either party breached the contract simply because the NIMA did not specifically provide for such a damages award. One commentator has stated precisely the opposite:

> In empowering the arbitrator to resolve their dispute, the parties generally are considered to have given authority to grant adequate monetary relief.... Arbitrators are considered to have the authority to award monetary damages for contract violations even though the contract does not specifically provide such remedy, since the parties have empowered the arbitrator to resolve their dispute....[A]rbitrators have authority to award money damages for contract violations even though the contract does not specifically provide such a remedy. To restrict arbitrators to remedies specifically set forth in the contract would negate arbitration as a method of dispute settlement ...

Elkouri & Elkouri, How Arbitration Works 579–80 (Marlin M. Volz & Edward P. Goggin eds., 5th ed.1997); *see also id.* at 393 (" '[T]he authority of an arbitrator to award damages is as truly and integrally a part of the contract as if it were written there in unmistakable English and boldface type.' ")(quoting *Jeffrey Mfg. Co.*, 34 Lab. Arb. (BNA) 814, 825 (1960)(Kuhn, Arb.)).

## IV.

The actions Ross Brothers alleged in its counterclaim are within the ambit of the grievance procedures contained in Article VI of the NIMA. Thus, Ross Brothers' proper remedy would have been to seek damages first through the Policy Committee, and if no relief was afforded there, through a neutral arbitrator. We agree with the district court that by failing to follow the clear grievance procedures to which it agreed, Ross Brothers waived the right to seek redress in federal court. Accordingly, we **AFFIRM** the judgment of the district court dismissing Ross Brothers' counterclaim.