## DIXIE WAREHOUSE & CARTAGE CO., Plaintiff-Appellant,

v.

## GENERAL DRIVERS, WAREHOUSE-MEN, AND HELPERS, LOCAL UN-ION NO. 89, Defendant-Appellee.

No. 00-5777.

United States Court of Appeals, Sixth Circuit.

May 7, 2002.

Before BOGGS and RYAN, Circuit Judges; and WILLIAMS, District Judge.[*]

WILLIAMS, Senior District Judge.

Plaintiff–Appellant Dixie Warehouse and Cartage Company has filed an appeal of the district court's grant of summary judgment affirming an arbitrator's decision in favor of Defendant–Appellee General Drivers, Warehousemen, and Helpers, Local Union No. 89. For the reasons set forth below, we AFFIRM the district court.

## I. BACKGROUND

Dixie Warehouse and Cartage Company ("Dixie") engaged in the public warehouse and trucking business in Louisville, Kentucky, from 1938 until March 1999. On September 1, 1995, Dixie entered into a Collective Bargaining Agreement ("Agreement") with General Drivers, Warehousemen, and Helpers, Local Union No. 89 ("Union") governing the terms and conditions of employment for those employees represented by the Union. This Agreement was in effect at the time of this controversy.

The Agreement categorized Dixie's sixty-four employees into one of three discrete classes: warehouse employees, garage employees, or truck drivers. The Agreement included a provision to deter-

mine who would be laid off during times when business decreased. The relevant portion of Article 21(b) provides as follows:

In all cases of layoff, plant-wide seniority shall prevail provided the remaining employees are reasonably qualified to perform the work. A man shall be considered reasonably qualified to perform the work if he has performed the job in question before and was not taken off the said job for incompetence.

(Article 21(b), Agreement at 19.)

The Agreement also provided a four-step procedure for resolving disputes concerning the Agreement, culminating in submission of any dispute to an arbitration board should other procedures fail. The Agreement limited the power of the arbitration board with the last sentence of Article 12, which reads, "The Arbitration Board may only interpret this Agreement, and shall not add to, subtract from, or otherwise change or modify it." (Article 12, Agreement at 10.)

In November 1998, Dixie lost a major trucking account causing the lay-off of sixteen employees, all truck drivers. All sixteen sought to "bump," or replace, existing employees in the warehouse division based on seniority. Four of the sixteen were allowed to bump warehouse employees based on seniority and previous work experience within Dixie's warehouse. The remaining twelve were laid off despite having more seniority than existing warehouse employees because they had not previously worked in the warehouse.

The Union filed a grievance pursuant to Article 12 of the Agreement, which was processed according to the provisions of that Article. On May 5, 1999, a hearing was held before arbitrator Edwin R. Render. At that hearing, the Union presented two witnesses, Doug Rigdon and Kenneth Harp. Both Mr. Rigdon and Mr. Harp testified that the laid-off drivers were qualified to load and unload trucks, fill and pack orders, and generally do the work of a warehouseman. Mr. Rigdon further testified that none of the laid-off employees were asked about any warehouse experience outside of Dixie. Also of particular importance to the arbitrator, Mr. Rigdon testified that in 1971, he was laid off from driving for Dixie but went directly to work in the warehouse despite having no prior experience.

Dixie presented no witnesses on its behalf. However, Dixie argued, as it does here, that the term "reasonably qualified" is defined by the language of Article 21(b) in the Agreement to include only those employees who have previously worked in Dixie's warehouse without being removed for incompetence.

The arbitrator issued an opinion on July 12, 1999, sustaining the Union's grievance against Dixie. He found Dixie's lack of any evidence that the truck drivers were unqualified to perform warehousing tasks particularly persuasive. The arbitrator focused on the more general application of "reasonably qualified" as mentioned in the first sentence of the clause at issue, applying it to all employees of Dixie and requiring Dixie to ascertain each employees' capabilities. The second clause, according to the arbitrator's interpretation, simply required Dixie to utilize any employee who had previously performed a given job, unless the employee had been removed for incompetence.

Dixie filed suit in the United States Court for the Western District of Kentucky seeking to vacate the arbitrator's award on the basis that the award was not drawn from the Agreement but instead relied on outside factors, thus conflicting with Article 12 of the Agreement. On cross motions for summary judgment, the court upheld the arbitrator's award determining that the arbitrator simply interpreted the Agreement as he was called upon to do. The district court pointed out

that the term "reasonably qualified" was ambiguous "at most" and relied on Sixth Circuit precedent to determine that the arbitrator's interpretation was definitive. (Mem. Op. & Order at 4, citing *Molders & Allied Workers Union AFL–CIO v. Brooks Foundry, Inc.,* 892 F.2d 1283, 1286 (6th Cir.1990).)

Dixie now appeals that decision seeking reversal of the lower court and vacation of the arbitrator's award.

## II. ANALYSIS

This court's review of an arbitral award is limited. This axiom has been confirmed repeatedly both by this court and by the Supreme Court. The Supreme Court recently revisited and reiterated this position in *Major League Baseball Players Ass'n. v. Garvey,* 532 U.S. 504, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001). In *Garvey,* the Court stated that "[c]ourts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." 121 S.Ct. at 1728 (citations omitted). The Court further stated "that if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." 121 S.Ct. at 1728 (quoting *Eastern Associated Coal Corp. v. Mine Workers,* 531 U.S. 57, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000)) (internal quotations and citations omitted).

The Court's decision in *Garvey* simply reaffirmed the standard of review to be employed by lower courts. This standard has been consistently applied to cases involving labor arbitration. The Court elaborated on the reasoning behind this standard in *United Paperworkers International Union v. Misco, Inc.:*

> Because the parties have contracted to have disputes settled by an arbitrator

chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.... As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

484 U.S. 29, 37–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

Our decisions involving the arbitration of labor disputes have consistently reflected these principles. Indeed, the parties to this case should be very familiar with them. This court stated in a 1990 case involving the same parties that

> [T]he Supreme Court outlined the limits of judicial review by stating: "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). As long as an award "draws its essence from the collective bargaining agreement" and the arbitrator does not dispense "his own brand of industrial justice," the award is legitimate. *Id.* at 597, 80 S.Ct. 1358.

*Dixie Warehouse & Cartage Co. v. General Drivers, Warehousemen, and Helpers, Lo-*

*cal Union No. 89*, 898 F.2d 507, 509–10 (1990).

Our cases have gone one step further and defined four discrete situations where an arbitrator's award may be vacated for departing from the essence of an agreement. These situations include: 1) an award that conflicts with the express terms of the collective bargaining agreement; 2) an award that imposes additional requirements that are not expressly provided in the agreement; 3) an award that is without rational support or cannot be rationally derived from the terms of the agreement; and 4) an award that is based on general considerations of fairness and equity instead of the precise terms of the agreement. *See Local 120, Int'l Molders & Allied Workers Union, AFL–CIO, v. Brooks Foundry, Inc.*, 892 F.2d 1283, 1286 (6th Cir.1990); *Dobbs, Inc. v. Local No. 614, Int'l Bhd. of Teamsters*, 813 F.2d 85, 86 (6th Cir.1987); *Cement Divs., Nat'l Gypsum Co. v. United Steelworkers of America*, 793 F.2d 759, 766 (6th Cir.1986); *DBM Techs., Inc. v. Local 227, United Food & Commercial Workers Int'l Union*, 257 F.3d 651, 656 (6th Cir.2001).

Dixie argues that the arbitrator's award conflicts with the express terms of the Agreement. The specific language in the agreement upon which Dixie relies is: "A man shall be considered reasonably qualified to perform the work if he has performed the job in question before and was not taken off the job for incompetence." (Agreement, Article 21(b).) Dixie contends that this clause effectively limits the meaning of "reasonably qualified," but that the arbitrator ignored this meaning and utilized outside resources in defining the term.

Dixie further argues that the arbitrator imposed additional requirements not found in the Agreement by requiring Dixie to evaluate each employee individually to determine if that employee is reasonably qualified to perform a particular job apart from any job experience the employee may have with Dixie. Thus, according to Dixie, the arbitrator exceeded his authority under the Agreement by adding to it in clear violation of Article 12 of the Agreement, which states, "The Arbitration Board may only interpret this Agreement, and shall not add to, subtract from, or otherwise change or modify it." (Article 12, Agreement at 10.)

Our review of the arbitrator's decision fails to find support for either argument. The arbitrator was called upon to interpret Article 21 of the Agreement, specifically, to determine when a person was "reasonably qualified" to bump into another position. In so doing, the arbitrator focused on the provision immediately preceding the sentence Dixie alleges defines "reasonably qualified," which states, "In all cases of layoff, plant-wide seniority shall prevail provided the remaining employees are reasonably qualified to perform the remaining work." (Article 21(b), Agreement at 19.) The arbitrator, reading the sentences together, determined that the sentence following was merely one express circumstance in which an employee could be considered reasonably qualified. That being the case, we cannot now say that the arbitrator somehow ignored the terms of the contract. Rather, in our view, the arbitrator did that which he was asked to do, i.e., interpret the Agreement.

Dixie cites *Timken Co. v. Local Union No. 1123, United Steelworkers of America, AFL–CIO*, 482 F.2d 1012 (6th Cir.1973), in support of its argument that the arbitrator utilized outside resources. In *Timken*, this court held that the arbitrator exceeded his authority by utilizing definitions outside the record for a term defined within the collective bargaining agreement by the parties. Such is not the case here. In the

instant case, the arbitrator recognized the ambiguity in the language of the Agreement and sought to resolve it.

Nor do we find any evidence indicating that the arbitrator imposed duties beyond those required within the Agreement. The arbitrator interpreted and construed the language of the Agreement. It is this interpretation and construction that the parties have bargained for by agreeing to have disputes settled by an arbitrator. Again, "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Misco,* 484 U.S. at 37, 108 S.Ct. 364. Dixie cannot now complain that it is unhappy with the bargain that it willingly made.

### III. CONCLUSION

For the above stated reasons, we AFFIRM the decision of the district court.